IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK L. HAMILTON, <br><br> Plaintiff, <br><br> v. <br><br> LOANCARE, LLC, <br><br> Defendant. | Case No. 1:19-cv-00554 <br><br> Honorable Mary M. Rowland |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**

**NOW COMES** Derrick Hamilton ("Plaintiff"), by and through his undersigned counsel, responding to Defendant LOANCARE, LLC's ("Defendant") Rule 12(b)(6) motion to dismiss as follows:

**Introduction**

Loancare's Motion to Dismiss ("Defendant's Motion") highlights its fundamental misunderstanding of the prohibitions set forth by the Fair Debt Collection Practices Act ("FDCPA") and the Bankruptcy Discharge Injunction. Moreover, Defendant's assault on Plaintiff's FDCPA claims ignores the adage that if it looks, walks, and sounds like a duck, it is probably a duck.

Defendant's Motion effectively argues that a debt collector can make materially false representations in communications with consumers as long as the communication contains boilerplate language stating it is not an attempt to collect a debt. Unfortunately for Defendant, it cannot use boilerplate language included in its one size fits all correspondence to Plaintiff to shield itself from liability and circumvent the vital consumer protections provided by the FDCPA. As

1

set forth below, Defendant's false representations to Plaintiff regarding a debt that was discharged in bankruptcy nearly four years ago violates the black letter of the FDCPA. Accordingly, Defendant's Motion is without merit and must be denied as a matter of law.

**Background**

In 2013, Plaintiff executed a mortgage and note in favor of United Security Financial Corp, ("subject loan" or "subject debt") secured by real property located at 148 North Bertram Drive, Yorkville, Illinois 60560 ("subject property"). (Compl. ¶¶6-7.) Plaintiff eventually defaulted on the subject loan and on January 23, 2015, United Security Financial Corp. initiated foreclosure proceedings against the subject property. (Compl. ¶9.) At some point, the subject loan was transferred/assigned to Lenderlive Network, Inc. ("Lenderlive"). (Compl. ¶ 10.)

On January 28, 2015, Plaintiff filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. (Compl. ¶11.) In his Chapter 13 Plan, Plaintiff expressed his intention to surrender the subject property to Lenderlive in full satisfaction of its claims. (Compl. ¶12.) On March 27, 2015, the Bankruptcy Court confirmed Plaintiff's Chapter 13 plan, binding Lenderlive to the terms of the plan. (Compl. ¶13.) Plaintiff performed his duties as set forth in his confirmed Chapter 13 Plan and on September 8, 2015, the Bankruptcy Court entered an order granting Plaintiff a discharge ("Discharge Order"), discharging Plaintiff's personal liability on the subject loan. (Compl. ¶¶14-15.) *See* 11 U.S.C. §1328(a) and §524.

On April 1, 2016, LenderLive transferred the servicing rights to the subject loan to RoundPoint Mortgage Servicing Corporation ("RoundPoint"). On December 16, 2016, the circuit court of Kendall County entered a judgment of foreclosure in the foreclosure case. (Compl. ¶17.) On May 2, 2017, RoundPoint transferred the servicing rights to the subject debt to Defendant.

2

(Compl. ¶18.) On July 10, 2017, the subject property was sold at public sale by the Sheriff of Kendall County. (Compl. ¶21.)

On December 13, 2018, over 17 months after the sale of the subject property, Defendant sent a letter addressed to Plaintiff pertaining to the subject debt ("Defendant's letter"). Defendant's letter stated in pertinent part:

> After the application of proceeds from the sale of the above listed property to your mortgage loan balance, **there remains a deficiency of $49,867.54**. The deficiency exceeds the maximum home loan guaranty amount authorized by the United States Department of Veterans Affairs ("VA") for your loan, which is $36,000.00. In accordance with established VA guidelines and regulations, the holder of the deficiency waives its right to collect the unpaid deficiency balance from you, and neither the VA nor the deficiency holder will pursue you for any portion of the deficiency balance. (emphasis added)
>
> ******
> **TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) IS APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.** (emphasis in original)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In ruling on a pending motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). In the event the

court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997).

## ARGUMENT

### I. Defendant's Letter Was a Communication In Connection with the Collection of a Debt

The FDCPA is a consumer protection statute designed to "eliminate abusive debt collection practices by debt collectors." *Suesz v. Med-1 Solutions, LLC,* 757 F.3d 636, 639 (7th Cir. 2014). Congress expressly found that "there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 1999 WL 284788, at *3 (N.D. Ill. 1999) *citing* 15 U.S.C. §1692(a).

For the FDCPA to apply, "two threshold criteria must be met. First, the defendant must qualify as a 'debt collector,' which the FDCPA defines as any person who 'uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' or who 'regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.' *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). "Second, the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Id.* There is no bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt. *Id.* "A court must analyze the nature of the parties' relationship, the presence or absence of a demand for payment, and the purpose and context of the communications." *Id.* at 395. "Whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." *Ruth v. Triumph P'Ships,* 577 F.3d 790, 798 (7th Cir. 2009). "In deciding whether communications count as collection letters under the FDCPA, courts must view them 'through the eyes of the

4

unsophisticated consumer.'" *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009).

Defendant contends that its letter was not sent in connection with the collection of a debt and thus is not subject to the FDCPA. Defendant's self-serving contention must fail at the pleading stage because the Seventh Circuit has held that "[w]hether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." *Ruth,* 577 F.3d at 798 (7th Cir. 2009). Here, any reasonable reading of Defendant's letter reveals that Defendant was attempting to convey information to Plaintiff regarding the subject debt. Specifically, Defendant's letter came from Defendant, the entity that is responsible for collecting payments on the subject loan, and expressly stated "there remains a deficiency of $49,867.54." Although the letter eventually waives the "deficiency balance", that does not negate the overall effect of the letter, which was to apprise Plaintiff that a debt existed and that debt is now being waived.

The fact that Defendant's letter did not expressly demand payment on the deficiency is not dispositive of the issue of whether the letter was sent in connection with the collection of a debt. Specifically, the Seventh Circuit Court of Appeals has held that the absence of a demand for payment is just *a factor* in determining whether a communication from a debt collector is made in connection with the collection of a debt. *Gburek,* 614 F.3d at 385. In *Gburek,* the Seventh Circuit held that a letter that referenced foreclosure alternatives and included the statutory debt collector disclaimer but did not make a specific demand for payment was sent in connection with the collection of a debt. *Id.* at 381. Similar to the letter in *Gburek,* the letter here references a debt (deficiency of $49,867.54) and includes the statutory debt collector disclaimer ("This communication is from a debt collector and any information obtained will be used for that

5

purpose."). Accordingly, Defendant's letter deserves the same fate as the letter in *Grubek,* a finding that it was sent in connection with the collection of a debt.

Not surprisingly, courts in this district have followed the binding precedent in *Grubek* and have consistently held that the absence of a specific demand for payment is not dispositive of whether a communication is in connection with the collection of a debt. In *Weber v. Seterus, Inc.,* 2018 U.S. LEXIS 51490 (N.D. Ill. 2018), the court denied a debt collector's motion to dismiss and held that a debt collector's communication that calculated a deficiency balance of an escrow account but did not make a specific demand for payment can qualify as a communication made in connection with the collection of a debt. *Id.* at *32. Defendant's letter in this case is nearly identical to the letter in *Weber* as it also included the calculation of a deficiency balance. Accordingly, this court should come to the same conclusion as the *Weber* court and find that Defendant's letter qualifies as a communication in connection with the collection of a debt.

Other courts in this district have similarly held that a communication from a debt collector need not contain a specific demand for payment for it to be in connection with the collection of a debt. *See Quinn v. Specialized Loan Servicing, LLC,* 2016 U.S. Dist. LEXIS 107299, at *14-15 (N.D. Ill. 2016) (denying debt collector's motion to dismiss; finding that the fact that a communication contained no demand for payment does not establish that the communication was not made in connection with the collection of debt); *Kabir v. Freedman Anselmo Lindberg LLC,* 2015 U.S. Dist. LEXIS 104299, at *9-10 (N.D. Ill. 2015) (rejecting argument that a communication from a debt collector must contain a demand for payment to qualify as a communication in connection with the collection of a debt); *Heyer v. Pierce & Assocs., P.C.,* 2017 U.S. Dist. LEXIS 3144, at *37-40 (N.D. Ill. 2017) (finding a communication from a debt collector to be in connection with the collection of a debt despite the absence of a specific demand for payment).

Here, the face of Defendant's letter leaves little question that it is in connection with the collection of a debt. In addition to references to the "deficiency of $49,867.54", Defendant's letter explicitly states:

> **TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) IS APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE.** (emphasis in original)

As demonstrated by the face of Defendant's letter, Defendant expressly identifies itself as a debt collector and refers to the FDCPA. Such language coupled with the relationship between Plaintiff and Defendant, which arose from a defaulted debt, heavily weighs in favor of the application of the FDCPA. Specifically, Plaintiff never contracted with Defendant and Defendant did not begin servicing the subject loan until after Plaintiff defaulted on the subject loan. *See Caprel v. Specialized Loan Servicing, Inc.,* 2016 U.S. Dist. LEXIS 120444, at *13-14 (N.D. Ill. 2016) (finding that a loss mitigation correspondence pertaining to a debt discharged in bankruptcy could be in connection with the collection of a debt because the relationship between the defendant and plaintiff arose out of plaintiff's defaulted debt). Although Defendant's self-identification as a debt collector does not itself transform its letter as an attempt to collect a debt, it does tip the scales in favor of application of the FDCPA when read in context with the other language in the letter (deficiency balance) and the relationship of the parties. In light of the totality of circumstances surrounding Defendant's letter and the controlling precedent in *Gburek* and its progeny, this Court should find that Defendant's letter qualifies as a communication in connection with the collection of a debt.

### II. Defendant's False and Misleading Representation is Actionable Under Both the Competent Attorney Standard and the Unsophisticated Consumer Standard

#### A. Competent Attorney Standard

Defendant contends that its letter does not violate the FDCPA because the letter was sent to Plaintiff's attorneys and not to Plaintiff directly, and thus the Court must apply the heightened competent attorney standard. Specifically, Defendant contends that a competent attorney would not be misled by the letter because the alleged falsehood was readily discoverable by Plaintiff's attorneys as they could have "easily researched the court docket to discover the discharge." Unfortunately for Defendant, the Seventh Circuit has held that that a debt collector's *false* representation (opposed to a misleading representation) in a communication to the consumer's attorney is actionable under the FDCPA. *Evory v. RJM Acquisitions Funding LLC,* 505 F.3d 769, 775 (7th Cir. 2007) (emphasis added). In *Emory,* the Seventh Circuit opined:

> "A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. Suppose the letter misrepresents the unpaid balance of the consumer's debt. The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake. *Such a misrepresentation would be actionable whether made to the consumer directly or indirectly through his lawyer*." *Id.* (emphasis added)

Here, Defendant does not and cannot argue that the letter is devoid of false representations because any objective reading of the letter reveals a false representation. Specifically, Defendant's letter contained an implicit false representation, that the deficiency balance in excess of the maximum home loan guaranty was owed up to the date it was waived by the "deficiency holder." The representation is false because Plaintiff's bankruptcy discharge in 2015 extinguished Plaintiff's personal liability on the subject loan, including any potential deficiency resulting from the sale of the property. Specifically, a "discharge under Chapter 13 discharges 'all debts provided for by the

8

plan.'" *In re Chappell,* 984 F.2d 775, 783 (7th Cir. 1993) quoting 11 U.S.C. §1328(a); *see also* 11 U.S.C. §524(a)(2) (a discharge order "operates as an injunction" against acts to collect discharged debts). It is undisputed the subject debt was provided for in Plaintiff's Chapter 13 plan and subsequently discharged. Accordingly, an implicit representation that Plaintiff was liable for a deficiency after his bankruptcy discharge is patently false. Even a competent attorney would not be able to immediately decipher that Plaintiff was not liable for the deficiency balance without first reviewing the pleadings in Plaintiff's bankruptcy case, including his confirmed Chapter 13 plan and discharge order. Specifically, Chapter 13 discharges only apply to debts *provided for by the plan* as opposed to Chapter 7 discharges, which apply to nearly all debts that arose prior the filing of the Chapter 7. *See Kontrick v. Ryan,* 540 U.S. 443, 447 (2004) (a Chapter 7 discharge "frees the debtor from *all debts* existing at the commencement of the bankruptcy proceeding other than obligations §523 of the Code excepts from discharge); *In re Mendiola,* 99 B.R. 864, 865 (Bankr. N.D. Ill. 1989) (a Chapter 7 discharge is so broad that it encompasses debts that are not scheduled in a debtor's bankruptcy petition.) Accordingly, even the competent attorney would not be able to determine whether the subject debt was discharged without reviewing the bankruptcy pleadings to determine if the subject debt was provided for by the plan. This type of legal analysis is the exact analysis that the Seventh Circuit contemplated and found to be too burdensome in *Evory:*

> The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation would be actionable whether made to the consumer directly or indirectly through his lawyer." *Evory,* 505 F.3d at 775.

As a result, pursuant to binding preceding in *Emory*, Defendant's false representation is actionable under the FDCPA even if it is subject to the heightened competent attorney standard.

9

### B. Unsophisticated Consumer Standard

Defendant contends that the competent attorney standard should apply opposed to the unsophisticated consumer standard. Defendant is mistaken. Courts in this district have held that a communication from a debt collector to a consumer's attorney containing a *false* representation should be reviewed under the unsophisticated consumer standard. Specifically, in *Mehling v. Fullet Rosenlund Anderson PC,* 2016 U.S. Dist. LEXIS 171727 (N.D. Ill. 2016), Judge Castillo held that the unsophisticated consumer standard (opposed to the competent attorney standard) applies to false representations contained in communications from a debt collector to a consumer's attorney. *Id.* at *10. In *Mehling,* the debt collector filed a pleading with the bankruptcy court that contained false representations. The debt collector argued that the competent attorney standard should apply because the pleadings were filed in court and thus directed at plaintiff's counsel. Judge Castillo rejected the debt collector's argument "because the representations were allegedly *false*" and thus the "appropriate standard to apply is that of the unsophisticated consumer." *Id.* (emphasis added).

Accordingly, Defendant's representations should be analyzed under the unsophisticated consumer standard. *See Wahl v. Midland Credit Mgmt.,* 556 F.3d 643, 645 (7th Cir. 2009) (in determining whether a collection letter violates the FDCPA, the letter must be viewed through the eyes of the "unsophisticated consumer.") Plaintiff brings claims under §1692e of the FDCPA. Section 1692e of the FDCPA prohibits a debt collector from using "**any false, deceptive, or misleading** representation or means with the collection of any debt." 15 U.S.C. §1692e. (emphasis added.) The "test for determining whether a debt collector violated §1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's

communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Wahl,* 556 F.3d at 646. "While the unsophisticated debtor is considered 'uninformed, naive, or trusting,' he is nonetheless deemed to possess 'rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.'" *Durkin v. Equifax Check Servs*., 406 F.3d 410, 414 (7th Cir. 2005) (internal quotations omitted).

Defendant contends that even if the unsophisticated consumer standard applies, Plaintiff's claims still fail because Defendant's misrepresentations would not mislead or deceive the unsophisticated consumer. Defendant's argument must fall flat because Plaintiff's FDCPA claims rest on a false *and* misleading representation, not exclusively a *misleading* representation. The distinction is of import because §1692e prohibits a debt collector from using "**any false, deceptive, or misleading** representation. Accordingly, Plaintiff can sustain his FDCPA claims based on his allegation that the representation was false without alleging that it was deceptive or misleading as well. As stated above, it is uncontested that the subject debt was provided for in Plaintiff's Chapter 13 plan and subsequently discharged. Accordingly, any implicit representation that Plaintiff was liable for a deficiency after his bankruptcy discharge is patently false and thus a violation of the black letter of the FDCPA. *See Randolph v. IMBS, Inc.,* 368 F.3d 726, 728 (7th Cir. 2004) (a representation that a debt is owed after a bankruptcy discharge is false).

Realizing that its letter contains a false representation, Defendant, in an attempt escape liability, seeks refuge in the bankruptcy disclaimer language. Unfortunately for Defendant, Courts in this District have consistently found that bankruptcy disclaimer language contained in a post-discharge communication does not absolve a debt collector from liability under the FDCPA. *See Price v. Seterus, Inc.*, 2016 U.S. Dist. LEXIS 48028, at *11-13 (N.D. Ill. 2016) (finding that bankruptcy disclaimer language does not shield a debt collector from FDCPA liability) (J.

Kendall); *Tate v. Ocwen Loan Servicing, LLC,* No. 14-cv-05528, Dkt. 20 (N.D. Ill. 2015) (bankruptcy disclaimer insufficient to negate the overall meaning of the letter) (J. Bucklo); *Radney v. Bayview Loan Servicing, LLC,* 2016 U.S. Dist. LEXIS 84877, at *9-10 (N.D. Ill. 2016) (despite bankruptcy disclaimer, post-discharge communications could be construed as attempts to collect a debt) (J. Darrah); *Freeman v. Ocwen Loan Servicing, LLC,* 2016 U.S. LEXIS 82751, at *15-16 (N.D. Ill. 2016) (declining to find, at the pleading stage, that post-discharge communications were informational and not made in connection with the collection of a debt) (J. Gottschall); *Massey v. Bayview Loan Servicing, LLC*, No. 16-cv-4491 (N.D. Ill. 2016) (despite bankruptcy disclaimer language, references to specific amounts owed, the parties' debtor-debtee relationship, and the context of the letter, support a finding that the communications could plausibly have been meant to collect a debt) (J. Kendall); *Gagnon v. JPMorgan Chase Bank, N.A.,* 2017 U.S. Dist. LEXIS 374, at *13-17 (N.D. Ill. 2017) (written communication that included bankruptcy disclaimer language could be construed as attempt to collect a discharged debt) (J. Dow); *Azari v. Seterus,* 2016 U.S. Dist. LEXIS 143139, at *5-7 (N.D. Ill. 2016) (finding bankruptcy disclaimer language did not shield creditor from the prohibitions of the FDCPA.) (J. Darrah).

Similarly, courts from other jurisdictions have come to the same conclusion. In *Bibolotti v. American Home Mortgage Servicing,* 2013 WL 2147949 (E.D. Tex. 2013), the court rejected the contention that the bankruptcy disclaimer absolves a debt collector from FDCPA liability and found that "[t]he disclaimer language basically amounts to an admission that it is an attempt to collect a debt." *Id.* at *14; *see also Barton v. Ocwen Loan Servicing, LLC*, 2013 WL 5781324 (D. Minn. 2013) (finding bankruptcy disclaimer language insufficient to absolve creditor from unlawful collection liability). For the reasons stated above, this Court should follow the

overwhelming authority holding that bankruptcy disclaimer language is insufficient to absolve Defendant from FDCPA liability.

In the alternative, if the Court finds that Defendant's letter did not contain a false representation, it must find that Plaintiff has plausibly alleged that Defendant's implicit representation that the deficiency was owed up to the date Plaintiff received the letter is misleading or deceptive. Simply put, it is highly plausible that the unsophisticated consumer would be deceived and/or misled by Defendant's letter. Specifically, the letter expressly states that that the deficiency is being waived pursuant to established VA guidelines and regulations and not because the debt was discharged in bankruptcy. Accordingly, any reasonable person, let alone the unsophisticated consumer, would have believed that they were liable for the deficiency up to the date they received the letter.

Most importantly, it would be inappropriate for the Court to dismiss Plaintiff's claims at this stage of the litigation because "the rule in the Seventh Circuit [is] that the unsophisticated consumer standard is generally a fact issue that cannot be decided at the pleading stage." *Janetos v. Fulton Friedman & Gullace, LLP*, 2013 U.S. Dist. LEXIS 29655, at *17 (N.D. Ill. 2013) (reversed on unrelated grounds) *citing Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999). Specifically, the Seventh Circuit in *Walker* held that a "complaint alleging that a particular notice confuses recipients may not be dismissed under Fed.R.Civ.P. 12(b)(6)—not only because 'this notice is confusing' states a claim on which relief may be granted, but also because district judges are not good proxies for the 'unsophisticated consumers' whose interests the statute protects." *Id.* at 501; *see also McMillan v. Collection Prof'l Inc.,* 455 F.3d 754, 759 (7th Cir. 2006) ("We have cautioned that a district court must tread carefully before holding that a letter is not confusing as a matter of law when ruling on Rule 12(b)(6) motion" in an FDCPA case).

Accordingly, Defendant's attempt to dispose of Plaintiff's FDCPA claims at the pleading stage must fail in accordance with the mandates of the Seventh Circuit.

## CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss should be denied as a matter of law.

Dated: June 6, 2019　　　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Mohammed O. Badwan
　　　　　　　　　　　　　　　　　　　　　　　　Mohammed O. Badwan, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　　　　Sulaiman Law Group, Ltd.
　　　　　　　　　　　　　　　　　　　　　　　　2500 S. Highland Ave., Ste. 200
　　　　　　　　　　　　　　　　　　　　　　　　Lombard, IL 60148
　　　　　　　　　　　　　　　　　　　　　　　　Phone (630)575-8180
　　　　　　　　　　　　　　　　　　　　　　　　mbadwan@sulaimanlaw.com

## **CERTIFICATE OF SERVICE**

    I, Mohammed O. Badwan, an attorney, certify that on June 6, 2019, I caused the foregoing to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.

/s/ Mohammed O. Badwan