UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERICK L. HAMILTON,<br><br>Plaintiff,<br><br>v.<br><br>LOANCARE, LLC,<br><br>Defendant. | No. 19 C 0554<br><br>Magistrate Judge Mary Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Derrick Hamilton ("Hamilton"), individually, and on behalf of all others similarly situated, filed a complaint against Defendant, LoanCare, LLC ("LoanCare"), pertaining to a letter Hamilton received concerning a debt from a real estate mortgage. Hamilton brings the claim for violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq*. (Dkt.15). This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper under 28 U.S.C. § 1391(b)(2). Loancare moves to dismiss the First Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Motion to Dismiss [16] is DENIED.

# I. FACTUAL ALLEGATIONS[1]

On January 10, 2013, Hamilton executed a mortgage ("the Mortgage") for the purchase of real estate located at 148 North Bertram Drive, Yorkville, Illinois ("the Property"). (Amend. Compl., Dkt. 15 at ¶¶ 16, 27). The Mortgage secured the repayment of $124, 343.00 of debt ("subject debt"). (*Id.* at ¶ 8). On January 28, 2015, Hamilton initiated a bankruptcy case for relief under Chapter 13 of the Bankruptcy Code, and the Bankruptcy Court confirmed the Chapter 13 Plan on March 27, 2015. (*Id.* at ¶¶ 11, 13). On September 8, 2015, Hamilton's liability on the subject debt was extinguished through the Chapter 13 Plan. (*Id.* at ¶15). On April 1, 2016, LenderLive transferred the servicing rights to the subject debt to RoundPoint Mortgage Servicing Corporation ("RoundPoint"). On May 2, 2017, the servicing rights to the subject debt were transferred from RoundPoint to Loancare, and Loancare received notice of Hamilton's bankruptcy discharge. (*Id.* at ¶¶ 18, 19). At the time Loancare acquired servicing rights, the subject debt was in default. The Property was then sold at a public sale on July 10, 2017. (*Id.* at ¶ 21). On December 13, 2018, Loancare sent a letter entitled Deficiency Waiver Notice ("Waiver Notice") to Hamilton at the address of the office suite of Hamilton's lawyers. (Dkt. 15-1, Dkt. 1-1).

The Waiver Notice stated: "After the application of proceeds from the sale of the above listed property to your mortgage loan balance, there remains a deficiency of $49, 867.54." (Dkt. 15-1). The Waiver Notice then went on to state that "the holder of

---

[1] The Court accepts as true all of Plaintiff's well-pleaded factual allegations in the Amended Complaint and draws all reasonable inferences in Plaintiff's favor in deciding the motion to dismiss. *See Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016).

the deficiency waives its right to collect the unpaid deficiency balance from you, and neither the [Department of Veterans Affairs ("VA")] nor the deficiency holder will pursue you for any portion of the deficiency balance." (*Id.*). Further, the Waiver Notice indicated: "To the extent the Fair Debt Collection Practices Act (FDCPA) is applicable, please be advised that this communication is from a debt collector and any information obtained will be used for that purpose." (*Id.*) (emphasis removed from original). The Waiver Notice also provided a bankruptcy disclaimer that stated if Hamilton "previously received a discharge in a bankruptcy proceeding, please notify [Loancare] immediately and be advised that this notice is for informational purposes only." (*Id.*) (emphasis removed from original). Moreover, the Waiver Notice stated: "This notice is not intended to collect, recover, or offset the debt against you personally and should not be considered a demand for payment or indicate that you are personally liable for this debt." (*Id.*) (emphasis removed from original).

Hamilton alleges that the Waiver Notice was "false and misleading because it strongly implies that prior to receiving [LoanCare's] letter, [Hamilton] was liable for the deficiency balance that arose after the sale of the Property." (Amend. Compl. Dkt. 15 at ¶ 31). Hamilton also alleges he was "highly confused and misled by [Loancare's] letter because he was led to believe that his bankruptcy discharge had no legal effect and that he was liable for the deficiency balance up to the date he received [Loancare's] letter." (*Id.* at ¶24).

3

## II. LEGAL STANDARD

Under Rule 8(a)(2), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint; the purpose is not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A determination of the sufficiency of a claim must be made "on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a plaintiff "must satisfy two conditions: first, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; and second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Horning v. Lab. Corp. of Am.*, No. 09 C 3421, 2009 U.S. Dist. LEXIS 80866, at *4 (N.D. Ill. Sep. 3, 2009) (internal citations omitted).

## III. DISCUSSION

Hamilton's claim is for a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. LoanCare moves to dismiss the claim, arguing that the Complaint fails to state a cause of action for three reasons: (1) the Waiver Notice is not "collection activity" under the FDCPA; (2) the Waiver Notice was sent

4

to Hamilton's attorney's rather than Hamilton and no "competent attorney" would have been deceived by the notice; and (3) if the "competent attorney" standard is not applied, the "unsophisticated consumer" would still not have been misled by the Waiver Notice. The Court will address the first two of these arguments.

### A. Whether the Waiver Notice is "collection activity" under the FDCPA

The FDCPA generally prohibits "debt collectors" from engaging in abusive, deceptive, or unfair debt-collection practices. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Pursuant to Section 1692e of the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e)(2). Two threshold criteria must be met for the FDCPA to apply: 1) "the defendant must qualify as a 'debt collector'"; and 2) "the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Gburek*, 614 F.3d at 384 (quoting 15 U.S.C. § 1692a(6), §§ 1692c(a)-(b), § 1692e, § 1692g).

Loancare does not dispute that it qualifies as a "debt collector," but argues that the Waiver Notice was not sent "in connection with the collection of a debt" because the Waiver Notice did not make an express demand for payment, list a payment due date, or threaten consequences should the debtor fail to pay. (Dkt. 17 at 8–9). Further Loancare asserts that the Waiver notice was not "collection activity" because it "specifically and clearly" stated:

5

> (a) that LoanCare 'waives its right to collect the unpaid deficiency balance' from Hamilton; (b) that neither LoanCare nor the VA will 'pursue [Hamilton] for any portion of the deficiency balance'; and (c) if Hamilton 'previously received a discharge in a bankruptcy proceeding,' the Waiver Notice is 'for informational purposes only' and 'is not intended to collect, recover, or offset the debt against you personally and should not be considered a demand payment or indicate that you are personally liable for this debt.'

(Dkt. 17 at 8) (*citing* Dkt. 15-1).

Whether a communication was sent in connection with the collection of a debt is a "commonsense inquiry," *Gburek*, 614 F.3d at 385, and "a question of objective fact, to be proven like any other fact." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009). While there is no "bright-line rule" to determine whether a communication from a debt collector was made in connection with the collection of a debt, the Seventh Circuit identified three factors courts should consider: 1) "the absence of a demand for payment"; 2) "[t]he nature of the parties' relationship"; and 3) "the purpose and context of the communications—viewed objectively." *Gburek*, 614 F.3d at 384–85.

Applying the *Gburek* factors to the Waiver Notice at issue here—from the perspective of a reasonable consumer—the Court finds that the amended complaint plausibly alleges, at least at the pleadings stage, that the Waiver Notice was sent in connection with the collection of a debt. True, the Waiver Notice does not make a demand for payment. In fact, it does the opposite—it waives a debt. But the absence of a demand for payment is not dispositive; rather, it "is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." *Gburek*, 614 F.3d

6

at 385. And unlike the first factor, the second factor—namely, the relationship between Loancare and Hamilton—does weigh in favor of applying the FDCPA. This is because "the only relationship [Loancare] had with [Hamilton] arose out of . . . [Hamilton's] defaulted debt." *Ruth*, 577 F.3d at 799. (holding on summary judgment that a reasonable trier of fact could find a privacy notice to be a debt collection letter even though it made no demand for payment because the only relationship the defendants had with the plaintiffs arose out of the plaintiffs' debt, and the privacy notice was sent in the same envelope as the collection letter); *see also Heyer v. Pierce & Assocs., P.C.*, No. 14 C 854, 2017 WL 75739, at *13 (N.D. Ill. Jan. 9, 2017), *reconsideration denied*, No. 14 C 854, 2017 WL 2404978 (N.D. Ill. June 2, 2017) (holding on summary judgment that the absence of demand for payment was not dispositive, stating, "[v]iewed objectively, given the purpose of the sale referenced in the Notice, combined with the fact that Plaintiff's only relationship with Pierce was in the context of debt collection, this Court is satisfied that the Notice was sent 'in connection with' an attempt to collect a debt.").

The third factor, "the purpose and context of the communications—viewed objectively," also weighs in favor of applying the FDCPA at least at the pleadings stage. Here, the Waiver Notice expressly stated "there remains a deficiency of $49.867.54," and included a disclaimer in all caps and bold stating, "**TO THE EXTENT THE FAIR DEBT COLLECTION PRATICES ACT (FDCPA) IS APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL**

**BE USED FOR THAT PURPOSE."** (Dkt. 15-1) (emphasis in original). Given the overall context, here, where (1) the relationship between Loancare and Hamilton is *solely* one of debt collector/ debtor; (2) the letter identified a deficiency balance; and (3) the letter included a disclaimer that "this communication is from a debt collector and any information obtained will be used for that purpose;" (Dkt. 15-1), the Court finds that a reasonable consumer could plausibly view the communication as one in connection with the collection of a debt. *See Weber v. Seterus, Inc.*, No. 16 C 6620, 2018 WL 1519163, at *11 (N.D. Ill. Mar. 28, 2018 ) (noting that even though the "notice of error" does not contain an explicit demand for payment, it "does calculate the 'deficient balance'; therefore, the court found that "a reasonable juror could conclude that, given the nature of the parties' relationship as servicer and borrower and the purpose and context of the notice of error, [defendant's] response qualified as a communication made in connection with the collection of a debt."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 WL 4264967, at *5–6 (N.D. Ill. Aug. 11, 2016) (denying motion to dismiss, holding that despite the absence of a demand for payment, "[w]hen viewed as a whole and construed in the light most favorable to the plaintiffs, the amended complaint plausibly alleges that the purpose of the communications was to collect a debt.").

Loancare argues that the presence of a bankruptcy disclaimer in the Waiver Notice strongly favors granting the motion to dismiss. (Dkt. 29 at 2–3) (citing Dkt. 15-1, "IF YOU . . . HAVE PREVIOUSLY RECEIVED A DISCHARGE IN A BANKRUPTCY PROCEEDING, . . . BE ADVISED THAT THIS NOTICE IS FOR

8

INFORMATIONAL PURPOSES ONLY." (emphasis in original)). But, as Hamilton correctly asserts, the presence of a bankruptcy disclaimer is not dispositive. Numerous courts have found communications to be in connection with an attempt to collect a debt despite the inclusion of a bankruptcy disclaimer. *See e.g., Radney v. Bayview Loan Servicing, LLC*, No. 15-CV-9380, 2016 WL 3551677, at *3 (N.D. Ill. June 30, 2016) (denying motion to dismiss, finding that the communications "could be construed as communications from a creditor to a debtor made in connection with the collection of a debt," despite inclusion of a bankruptcy disclaimer, because "the relationship between the partiers was clearly that of creditor-debtor"); *Price v. Seterus, Inc.*, No. 15 C 7541, 2016 WL 1392331, at *4 (N.D. Ill. Apr. 8, 2016) (notwithstanding the inclusion of a bankruptcy disclaimer, the court found that "the presence of detachable payment coupons, . . . , the parties' debtor-debtee relationship, and the context of the letters, each of which refer to a specific amount due and when such an amount would be due by, support a finding that the communications could plausibly have been meant to collect a debt"); *Caprel v. Specialized Loan Servicing, Inc.*, No. 15 C 09145, 2016 WL 4678313, at *3–5 (N.D. Ill. Sept. 7, 2016) ("Even a reasonable consumer, despite the bankruptcy disclaimer and the "THIS IS FOR INFORMATIONAL PURPOSES ONLY" disclosure . . . would feel obligated to pay [defendant] for any past-due debt . . .").

Loancare also argues that a reasonable consumer could not plausibly believe the purpose of this communication was to collect a debt because the Waiver Notice explicitly stated that Loancare "waives its right to collect the unpaid deficiency

9

balance" and will not pursue Hamilton "for any portion of the deficiency balance." (Dkt. 17 at 8–10). Although admittedly a close call, the Court agrees with Hamilton, at least at the pleadings stage, that given the context here of the exclusive debt collector/debtor relationship between Loancare and Hamilton, and the fact that the letter identified a deficiency balance and included a debt collector disclaimer, a reasonable consumer could view this communication as debt collection activity despite the waiver language. *See Stricklin v. Jefferson Capital Sys., LLC*, No. 11-CV-201-DRH, 2011 WL 5325735, at *5–7 (S.D. Ill. Nov. 3, 2011) (The court denied motion to dismiss and refused to find as a matter of law that "a reasonable consumer would not believe the debt collector sent the communication in connection with the collection of a debt," when "the relationship of the parties is solely that of debtor and debt collector," and the letter stated in bold, "[t]his communication is from a debt collector." The court made this finding even though the overriding intent of the communication was to notify the reader of relevant privacy laws and the letter contained no demand for payment).

When taken as a whole and construed in the light most favorable to the plaintiffs, the Court finds that, from the perspective of a reasonable consumer, the amended complaint plausibly alleges that the purpose of the Waiver Notice was to collect a debt. The Court now turns to Loancare's next argument that any alleged false or misleading communication in the Waiver Notice is not actionable under the FDCPA when subject to the "competent attorney" standard.

### B. Whether Loancare's "false and misleading" representation is actionable under the competent attorney standard

When a case "involves alleged false representations to a debtor's attorney," the Seventh Circuit has found that the relevant inquiry is "whether a competent attorney, even if he is not a specialist in consumer debt law, would be deceived by" the representation. *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 603 (7th Cir. 2016); *Grajny v. Credit Control, LLC*, No. 18 C 2719, 2018 WL 4905019, at *3 (N.D. Ill. Oct. 9, 2018) ("the controlling 'competent attorney' analysis . . . looks at whether an attorney would be deceived by a communication, not whether a debt collector exercised reasonable diligence in ascertaining the existence of a debt."). The Seventh Circuit has held that there is not an actionable FDCPA violation where "a competent attorney would be able to determine whether his client continued to owe a debt" and "would therefore not be deceived by" the communication. *Bravo*, 812 F.3d at 603.

Loancare points out, and Hamilton does not dispute, that although Hamilton is the recipient named in the Waiver Notice, the Waiver Notice was sent to the office suite of Hamilton's lawyers in the present cause of action. (Dkt. 17 at 2, fn 1) (citing (Dkt. 15-1, Dkt. 1-1)). Loancare argues that given this, the heightened "competent attorney standard" as opposed to the "unsophisticated consumer standard" should be used. Because the Waiver Notice was sent to Hamilton's attorney, the Court will apply the "competent attorney standard" in its analysis. *Bravo*, 812 F.3d at 603; *Grajny*, 2018 WL 4905019, at *3.

Here, Hamilton alleges that the Waiver Notice "contained an implicit false representation, that the deficiency balance in excess of the maximum home loan guaranty was owed up to the date it was waived by the 'deficiency holder.'" (Dkt. 27 at 8). Hamilton explains, "[t]he representation is false because Plaintiff's bankruptcy discharged in 2015 extinguished Plaintiff's personal liability on the subject loan, including any potential deficiency resulting from the sale of the property." (*Id.*). Loancare argues that any false or misleading representation in the Waiver Notice is not actionable under the competent attorney standard because a competent attorney would not have been misled by the Waiver Notice, nor would it have taken an expensive or extensive investigation for a competent attorney to know that Hamilton owed no debts and that the representation in the Waiver Notice of a deficiency balance was false. (Dkt. 17 at 12). In support, Loancare cites to *Grajny* and *Bravo*. In both *Grajny* and *Bravo*, the court dismissed or affirmed the dismissal of a plaintiff's FDCPA claims, finding that a competent attorney would not be deceived by a letter that was trying to collect a debt that was discharged from a bankruptcy proceeding where the same attorney represented the plaintiff in the bankruptcy proceeding. *Grajny*, 2018 WL 4905019, at *9; *Bravo*, 2014 WL 6980438, at *4–5.

Hamilton argues that in contrast to the attorneys in *Bravo* and *Grajny*, Hamilton's lawyer did not represent him in the bankruptcy proceeding and was not aware of what debts were discharged in Hamilton's bankruptcy plan. Hamilton argues that unlike *Bravo* and *Grajny*, in this scenario, a competent attorney would not have been

12

able to discover the falsity of the Waiver Notice on its face but would have had to conduct an investigation. (Dkt. 29 at 9). Specifically, his lawyers would have to conduct research to discover whether or not the subject loan was discharged in Hamilton's Bankruptcy plan because Chapter 13 discharges only apply to particular debts laid out in the plan, as opposed to Chapter 7 discharges which apply to nearly all debts that arose prior to the filing of the Chapter 7. (*Id.*) (*citing Kontrick v. Ryan*, 540 U.S. 443, 447 (2004) (stating that a Chapter 7 discharge "frees the debtor from all debts existing at the commencement of the bankruptcy proceeding . . .")).

Hamilton argues that this type of legal analysis is the same type of analysis that the Seventh Circuit has found to require a burdensome investigation. (Dkt. 29 at 9) (*citing Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 775 (7th Cir. 2007)). In *Evory*, the court held that if a lawyer is unable to discover the falsity of the representation without an investigation, the misrepresentation would be actionable. *Evory*, 505 F.3d at 775 ("A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. The lawyer might be unable to discover the falsity of the representation *without an investigation* that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer.") (emphasis added).

Although admittedly another close determination, the Court finds at this early stage of the litigation, without expressing an opinion on the ultimate merits of Hamilton's claim, that Hamilton has plausibly alleged that a competent attorney

13

would be unable to discover the falsity of the representation without an investigation; and thus the misrepresentation would be actionable under *Evory*.[2] *See Evory*, 505 F.3d at 775. Accordingly, Loancare's motion to dismiss is denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [16] is DENIED.

E N T E R:

Dated: August 22, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

---

[2] Because the Court determined that Hamilton has plausibly alleged that the misrepresentation is actionable under the heightened "competent attorney" standard, the Court need not address Loancare's arguments that the misrepresentation is not actionable under the "unsophisticated consumer" standard.

14