IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK L. HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-00554 |
| | ) | |
| v. | ) | Honorable Susan E. Cox |
| | ) | Magistrate Judge |
| LOANCARE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
LOANCARE, LLC'S MOTION TO RECONSIDER RULING ON
<u>DEFENDANT LOANCARE, LLC'S MOTION TO DISMISS</u>**

## Table of Contents

| | | |
|---|---|---|
| I. | Issue Raised | 1 |
| II. | Pertinent Procedural History and Pleadings | 1 |
| III. | Pertinent Allegations of the Complaint | 2 |
| | A. Events Prior to the Waiver Notice | 2 |
| | B. The Waiver Notice | 2 |
| IV. | Legal Standards on Rule 12(b)(6) Motion to Dismiss | 4 |
| V. | Legal Standards on Motion to Reconsider | 5 |
| VI. | The Court's Ruling on the Motion to Dismiss | 7 |
| | A. The Court's Findings | 7 |
| | B. The Court's Error of Law | 9 |
| | C. Application of Proper Law to the Waiver Notice | 12 |
| |    1. The Objective Purpose of the Waiver Notice | 12 |
| |    2. The Bankruptcy Disclaimer Issue | 13 |
| |    3. Reconsideration of the Ruling is Required | 14 |

## Table of Cases

| | |
|---|---|
| *Goodson v. Bank of America*, 600 Fed. Appx. 422 (6th Cir. 2015) | 3, 11, 13 |
| *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) | 3, 7, 10, 11, 12, 13, 14 |
| *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822 (7th Cir. 2015) | 4 |
| *Pierce v. Zoetis, Inc.*, 818 F.3d 274 (7th Cir. 2016) | 4 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 4 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 4 |
| *Tobey v. Chibucos*, 890 F.3d 634 (7th Cir. 2018) | 4 |

| | |
|---|---|
| *U.S. ex rel. Upton v. Family Health Network, Inc*., 900 F. Supp. 2d 821 (N.D. Ill. 2012) | 5 |
| *Winiecki v. Creditors Interchange Receivable Mgmt., LLC*, 14 F. Supp. 3d 1086 (N.D. Ill. 2014) (J. Castillo) | 5 |
| *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759 (7th Cir. 2010) | 5 |
| *Hecker v. Deere & Co*., 556 F.3d 575 (7th Cir. 2009) | 5 |
| *Muczynski v. Lieblick*, 2013 WL 1080613 (N.D. Ill. 2013) | 5 |
| *Young v. Murphy*, 161 F.R.D. 61 (N.D. Ill. 1995) (J. Castillo) | 5, 6, 14 |
| *Pearle Vision, Inc. v. Eye Exam Illinois-Lansing Facility, Ltd*., 1994 WL 374272 (N.D. Ill. 1994) | 5 |
| *U.S. for Use & Ben. of A. Hollow Metal Warehouse, Inc. v. U.S. Fid. & Guar. Co*., 700 F. Supp. 410 (N.D. Ill. 1988) | 5 |
| *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185 (7th Cir.1990) | 6 |
| *Caisse Nationale de Credit Agricole v. CBI Indus., Inc*., 90 F.3d 1264 (7th Cir. 1996) | 6 |
| *Publishers Res., Inc. v. Walker-Davis Publications, Inc*., 762 F.2d 557 (7th Cir. 1985) | 6 |
| *Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083 (N.D. Ill. 2004) (J. Castillo) | 6 |
| *McSparran v. Larson*, 2006 WL 2052057 (N.D. Ill. 2006) | 6, 7 |
| *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009) | 7, 8, 9, 10 11, 12 |
| *Heyer v. Pierce & Assocs., P.C*., 2017 WL 75739 (N.D. Ill. 2017) | 8 |
| *Stricklin v. Jefferson Capital Sys., LLC*, 2011 WL 5325735 (S.D. Ill. 2011) | 9 |
| *Weber v. Seterus, Inc*., 2018 WL 1519163 (N.D. Ill. 2018) | 10 |
| *Bailey v. Sec. Nat. Servicing Corp*., 154 F.3d 384 (7th Cir. 1998) | 11, 13 |
| *Horkey v. J.V.D.B. & Associates*, 333 F.3d 769 (7th Cir. 2003) | 11 |
| *Maynard v. Cannon*, 401 Fed. Appx. 389 (10th Cir. 2010) | 11 |
| *Marshall v. Deutsche Bank Nat'l Trust Co*., 2011 WL 345988 (E.D. Ark. 2011), aff'd 445 Fed. Appx. 900 (8th Cir. 2011) | 11 |
| *Randerson v. Taylor Hayden, PLLC*, 2015 WL 4429354 (M.D. Fla. 2015) | 11 |
| *Bohringer v. Bayview Loan Servicing, LLC*, 141 F.Supp.3d 1229 (S.D. Fla. 2015) | 11 |

**Statutes**

| | |
|---|---|
| Fed. R. Civ. P. 8(a)(2) | 4 |
| Fed. R. Civ. P. 12(b)(6) | 4 |
| Fed. R. Civ. P. 10(c) | 5 |
| Fed. R. Civ. P. 59(e) | 5 |
| Fed. R. Civ. P. 60(b) | 5 |
| Fed. R. Civ. P. 54(b) | 5 |

Defendant LoanCare, LLC ("LoanCare"), by its attorney Charles M. Baum, files its Motion to Reconsider the Court's ruling (Doc. 31) on its Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the First Amended Class Action Complaint of Plaintiff Derrick L. Hamilton ("Hamilton"), as follows:

**I.     Issue Raised**

Whether the Court, in ruling that Hamilton's complaint plausibly alleged that the communication at issue was sent in connection with the collection of a debt, made an error of law on this threshold question by assessing the purpose of the communication "from the perspective of a reasonable consumer" or as a "reasonable consumer could plausibly view the communication," rather than by determining, factually and objectively, whether the communication was sent in connection with the collection of a debt.

**II.    Pertinent Procedural History and Pleadings**

On April 12, 2019, Hamilton filed his First Amended Class Action Complaint (the "Complaint") seeking relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Doc. 15.) On April 25, 2019, LoanCare filed its Rule 12(b)(6) motion to dismiss the Complaint (the "Motion"). (Docs. 16, 17.)[1]  The Motion sought, *inter alia*, dismissal with prejudice based upon an argument that the communication in question (the "Waiver Notice") was not debt collection activity.

In deciding that the Complaint plausibly alleged that the Waiver Notice was sent in connection with the collection of a debt, the Court made an error of law by assessing the purpose

---

[1] The Motion consists of Defendant LoanCare, LLC's Motion to Dismiss (Doc. 16) and the Memorandum of Law in Support of Defendant LoanCare, LLC's Motion to Dismiss (Doc. 17).  Other pleadings related to the Motion are Plaintiff's Response in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss (the "Response") (Doc. 27) and the Reply Brief in Support of Defendant LoanCare, LLC's Motion to Dismiss (Doc. 29).

1

of the communication "from the perspective of a reasonable consumer," or as a "reasonable consumer could plausibly view the communication." (Doc. 31, pp. 6, 8, 10.) Respectfully, the Court should have assessed this threshold question by determining, factually and objectively, whether the Waiver Notice was sent in connection with the collection of a debt. The plain language of the Waiver Notice, which did not seek to collect from Hamilton but rather *waived* LoanCare's right to collect from Hamilton, leads to only one conclusion – that the communication was not sent in connection with the collection of a debt.

### III. Pertinent Allegations of the Complaint

#### A. Events Prior to the Waiver Notice

On January 28, 2015, Hamilton initiated a bankruptcy case in the Northern District of Illinois by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. (Doc. 15, ¶ 11.) As to the subject debt, Hamilton's Chapter 13 plan provided that he is surrendering certain property to LenderLive Network, Inc. in full satisfaction of its claims. (Doc. 15, ¶ 12.) The Bankruptcy Court confirmed Hamilton's Chapter 13 Plan, and on September 8, 2015, Hamilton was granted a discharge under the Bankruptcy Code, thus extinguishing Hamilton's liability on the subject debt. (Doc. 15, ¶¶ 13-15.) LenderLive Network, Inc. transferred the servicing rights to the subject debt to RoundPoint Mortgage Servicing Corporation which, after a judgment of foreclosure, transferred the servicing rights to the subject debt to LoanCare. (Doc. 15, ¶¶ 16, 17, 18, 20.)

#### B. The Waiver Notice

On December 13, 2018, LoanCare sent the Waiver Notice, which was entitled "DEFICIENCY WAIVER NOTICE." (Doc. 15-1.) The Waiver Notice: (a) did not make a demand for payment; (b) did not list a payment due date; and (c) did not threaten consequences

should Hamilton fail to pay. (Doc. 15-1.)[2]

The Waiver Notice specifically provided:

> After the application of proceeds from the sale of the above listed property to your mortgage loan balance, there remains a deficiency of $49,867.54. The deficiency exceeds the maximum home loan guaranty amount authorized by the United States Department of Veterans Affairs ("VA") for your loan, which is $36,000.00. In accordance with established VA guidelines and regulations, the holder of the deficiency *waives its right to collect the unpaid deficiency balance from you,* and *neither the VA nor the deficiency holder will pursue you for any portion of the deficiency balance*.

(Doc. 15-1)(emphasis added). The Waiver Notice also provided:

> *IF YOU ARE CURRENTLY INVOLVED IN A BANKRUPTCY PROCEEDING OR HAVE PREVIOUSLY RECEIVED A DISCHARGE* IN A BANKRUPTCY PROCEEDING, PLEASE NOTIFY US IMMEDIATELY AND BE ADVISED THAT THIS NOTICE IS FOR *INFORMATIONAL PURPOSES ONLY. THIS NOTICE IS NOT INTENDED TO COLLECT*, RECOVER, OR OFFSET THE DEBT AGAINST YOU PERSONALLY AND *SHOULD NOT BE CONSIDERED A DEMAND FOR PAYMENT OR INDICATE THAT YOU ARE PERSONALLY LIABLE FOR THIS DEBT*. PLEASE CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS UNDER BANKRUPTCY LAW.

(Doc. 15-1)(emphasis added). Finally, the Waiver Notice provided:

> TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) IS APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

---

[2] See, e.g. *Goodson v. Bank of America*, 600 Fed. Appx. 422, 432 (6th Cir. 2015) (letter was not "debt collection activity" since it did not make an express demand for payment, did not list a payment due date, or did not threaten consequences should debtor fail to pay); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384-385 (7th Cir. 2010) (the absence of a demand for payment and the objective purpose and context of the communication are factors in the determination of whether the communication was sent in connection with the collection of a debt).

3

(Doc. 15-1).

As such, the Waiver Notice *waived* LoanCare's right to collect from Hamilton. Indeed, the purpose of the Waiver Notice was to advise Hamilton that LoanCare was *not* pursuing Hamilton for any balance. Importantly, Hamilton in the Response admits the obvious – that an "effect of the letter" was to apprise Hamilton "that debt is now being waived." (Doc. 27, p. 5.) Moreover, in ruling on the Motion, the Court found that the "Waiver Notice does not make a demand for payment. In fact, "it does the opposite—it waives a debt." (Doc. 31, p. 6.)

**IV.** **Legal Standards on Rule 12(b)(6) Motion to Dismiss**

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). "Although detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc*., 818 F.3d 274, 277 (7th Cir. 2016), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. In deciding a motion to dismiss, the Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

In ruling on a Rule 12(b)(6) motion, a court must assess the complaint "as a whole." *U.S.*

*ex rel. Upton v. Family Health Network, Inc*., 900 F. Supp. 2d 821, 829 (N.D. Ill. 2012). A document that is attached to a pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when ruling on a Rule 12(b)(6) motion, a court must "consider documents attached to the complaint as part of the complaint itself." *Winiecki v. Creditors Interchange Receivable Mgmt., LLC*, 14 F. Supp. 3d 1086, 1090 (N.D. Ill. 2014)(J. Castillo), citing *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). The attachments to a complaint "may permit the court to determine that the plaintiff is not entitled to judgment" in his favor. *Winiecki,* 14 F. Supp. 3d at 1090, citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009).

## V.     Legal Standards on Motion to Reconsider

Because the denial of a motion to dismiss is not a final judgment, a motion to reconsider the decision is not governed by Fed. R. Civ. P. 59(e), which addresses motions to alter or amend judgments. *Muczynski v. Lieblick*, 2013 WL 1080613, at *1–2 (N.D. Ill. 2013). Nor does the denial of a motion to dismiss fall within the scope of Fed. R. Civ. P. 60(b), which provides a procedure for seeking relief from a final judgment, order, or proceeding. *Id*.

Rather, courts in this District have contemplated motions to reconsider interlocutory orders under Fed. R. Civ. P. 54(b) ("Rule 54(b)"), common law, and the court's inherent authority. *Id*.; see also *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995) (J. Castillo) (applying Rule 54(b) as the proper vehicle for a motion to reconsider an interlocutory order denying a motion for summary judgment). Specifically, a motion to reconsider the denial of a motion to dismiss is governed by Rule 54(b). *Pearle Vision, Inc. v. Eye Exam Illinois-Lansing Facility, Ltd*., 1994 WL 374272, at *1 (N.D. Ill. 1994). Motions to reconsider under Rule 54(b) do not have express filing requirements or time constraints. *Id*.; *U.S. for Use & Ben. of A. Hollow Metal Warehouse, Inc. v.*

5

*U.S. Fid. & Guar. Co.*, 700 F. Supp. 410, 412 (N.D. Ill. 1988) (the Federal Rules of Civil Procedure place no time constraints on motions to reconsider interlocutory orders).[3]

The Court may, *sua sponte* or on motion, correct clear errors of fact or law in an interlocutory order. *Young*, 161 F.R.D. at 62. Reconsideration is appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Young*, 161 F.R.D. at 62, citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). The Seventh Circuit has stated that a motion for reconsideration may be brought "to correct manifest errors of law or fact." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996); *Publishers Res., Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Interlocutory orders may also be reconsidered by a district court when to do so is "consonant with justice." *Young*, 161 F.R.D. at 62. Whether to grant a motion to reconsider is a matter squarely within the Court's discretion. *Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1085 (N.D. Ill. 2004) (J. Castillo), citing *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270.

A defendant may bring a motion to reconsider an erroneous denial of a motion to dismiss where the complaint did not state a cause of action. In *McSparran v. Larson*, 2006 WL 2052057, at *1 (N.D. Ill. 2006), the court faced a motion to reconsider the denial of defendants' motion to dismiss the complaint. Plaintiffs in that matter filed a derivative suit which lacked any allegations as to actions taken by the board. *Id*. at *1, 4. Rather, the complaint only alleged two instances of purported misconduct by former employees, which did not establish a cause of action for a derivative suit based on a systematic lack of board oversight. *Id*. at *5. As the allegations of the

---

[3] On September 3, 2019, the Court entered an order allowing LoanCare to file its motion to reconsider by September 13, 2019. (Doc. 39.)

6

complaint did not support the cause of action, the court granted defendants' motion to reconsider the denial of their motion to dismiss and dismissed the complaint. *Id*. at *6.

## VI. The Court's Ruling on the Motion to Dismiss

### A. The Court's Findings

In its Memorandum Opinion and Order (the "Opinion"), the Court correctly noted that two "threshold criteria" must be met for the FDCPA to apply: (1) the defendant must qualify as a debt collector; and (2) the communication by the debt collector that forms the basis of the suit must have been made "in connection with the collection of any debt." (Doc. 31, p. 5, citing *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010).) The Court stated that whether a communication was sent in connection with the collection of a debt is a "commonsense inquiry," and "a question of objective fact, to be proven like any other fact." (Doc. 31, p. 6, citing *Gburek*, 614 F.3d at 385; *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009).) The Court also identified three factors courts should consider on this question: (1) "the absence of a demand for payment"; (2) "[t]he nature of the parties' relationship"; and (3) "the purpose and context of the communications—viewed objectively." (Doc. 31, p. 6, citing *Gburek*, 614 F.3d at 384-385.)

The Court assessed each of the three factors in turn. As to the first factor ("the absence of a demand for payment"), the Court found, and LoanCare agrees, that the "Waiver Notice does not make a demand for payment. In fact, "it does the opposite—it waives a debt." (Doc. 31, p. 6.) The Court also points out that the absence of a demand for payment is not dispositive, but rather is just "one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." (Doc. 31, p. 6, citing *Gburek*, 614 F.3d at 385.) LoanCare does not argue that the mere absence of a demand for payment is dispositive.

7

As to the second factor ("the nature of the parties' relationship"), the Court found that the relationship between LoanCare and Hamilton weighed in favor of applying the FDCPA, as the only relationship LoanCare had with Hamilton "arose out of" Hamilton's debt. (Doc. 31, p. 6, citing *Ruth*, 577 F.3d at 799.) LoanCare does not argue that LoanCare and Hamilton had any relationship except for that which arose out of Hamilton's debt.[4]

The Court found that the third factor ("the purpose and context of the communications—viewed objectively") weighed in favor of applying the FDCPA. (Doc. 31, p. 7.) In support of this finding, the Court notes two facts: (a) the Waiver Notice states that "there remains a deficiency of $49.867.54" (which the Waiver Notice then explicitly waived); and (b) the Waiver Notice includes an FDCPA disclaimer. (Doc. 31, pp. 7-8.) In determining whether the Waiver Notice was sent in connection with the collection of a debt, the Court assessed the purpose of the Waiver Notice "from the perspective of a reasonable consumer," or as a "reasonable consumer could plausibly view the communication." (Doc. 31, pp. 6, 8, 10.) Applying this standard, the Court found that the Complaint plausibly alleged that the Waiver Notice was sent in connection with the collection of a debt. (Doc. 31, pp. 6, 8, 10.)[5]

---

[4] The two cases on which the Court relies for the significance of the relationship "arising out of … the defaulted debt" are factually inapposite as they both involved, in addition to the relationship, direct attempts to collect the debt. *Ruth*, 577 F.3d at 799 (communication at issue was "sent in the same envelope as the collection letter"); *Heyer v. Pierce & Assocs., P.C.*, 2017 WL 75739, at *13 (N.D. Ill. 2017) (communication at issue was a notice of sale in a foreclosure case, which was "an attempt to sell" the property, and the "entire purpose of the sale was to collect" on the debt).

[5] The Court states that LoanCare "argues that a reasonable consumer could not plausibly believe the purpose of this communication was to collect a debt." (Doc. 31, p. 9.) LoanCare, however, did not present any argument as to the reasonable consumer's belief on the threshold question of whether the factual and objective purpose of the Waiver Notice was to collect a debt. LoanCare only presented argument on the reasonable consumer's belief on the post-threshold, secondary question of whether the Waiver Notice was false or misleading under Section 1692e, which is not at issue in this motion.

B.      **The Court's Error of Law**

In ruling that the Complaint plausibly alleged that the communication at issue was sent in connection with the collection of a debt, the Court made an error of law by assessing the purpose of the communication "from the perspective of a reasonable consumer," or as a "reasonable consumer could plausibly view the communication." (Doc. 31, pp. 6, 8, 10.) In deciding the debt collection activity question from the perspective of how a reasonable consumer could view this communication, the Court relied on *Stricklin v. Jefferson Capital Sys., LLC*, 2011 WL 5325735, at *5-7 (S.D. Ill. 2011). (Doc. 27, p. 10.) This Court stated that the Southern District in *Stricklin*, in denying a motion to dismiss, declined to find as a matter of law that a "reasonable consumer would not believe the debt collector sent the communication in connection with the collection of a debt." (Doc. 27, citing *Stricklin,* 2011 WL 5325735, at *7.)

The Southern District in *Stricklin* applied a standard of whether an "unsophisticated, but reasonable" consumer would "not believe the debt collector sent the communication in connection with the collection of a debt." *Stricklin,* 2011 WL 5325735, at *7. The Seventh Circuit has not adopted the standard of an "unsophisticated, but reasonable" consumer's belief used in *Stricklin*, or even the standard of a "reasonable consumer's" belief used in the Opinion, to assess whether a communication was sent in connection with the collection of a debt.

Indeed, in *Ruth* the Seventh Circuit reviewed a District Court ruling that assessed whether a communication was sent in connection with an attempt to collect a debt through how an "unsophisticated debtor would view" the communication. 577 F.3d at 798. The Seventh Circuit answered this question of "first impression for our court" by rejecting the "unsophisticated consumer" standard and adopted a purely "objective" standard. *Id*. The Seventh Circuit ruled that using an "unsophisticated consumer" standard to determine whether a communication is made in

9

connection with collection of a debt "would stand the statute on its head." *Id*. The court concluded that whether a communication was sent "in connection with" an attempt to collect a debt is a question of objective fact, to be proven like any other fact. *Id*.[6] The *Ruth* court then assessed "as a matter of law" whether any reasonable trier of fact could objectively conclude that the communication at issue was sent in connection with an attempt to collect a debt. *Id*. at 798-799.[7]

Subsequent to *Ruth*, the Seventh Circuit in *Gburek* acknowledged that there is no "bright-line rule" for determining whether a communication was made in connection with the collection of any debt, and instead called for a "commonsense inquiry" on this issue. 614 F.3d at 384-385. The Court in *Gburek* did not assess communications from the "perspective of a reasonable consumer" or as a "reasonable consumer could plausibly view the communication," as the Court did in the Opinion. (Doc. 31, pp. 6, 8, 10.) Rather, under *Gburek*, the court looks at the "purpose and context of the communications—viewed objectively," i.e. ***why the communication was sent***, objectively and as a matter of fact.

The Seventh Circuit in *Gburek* analyzed the language, purpose and context of

---

[6] The Court also cited *Weber v. Seterus, Inc.*, 2018 WL 1519163, at *11 (N.D. Ill. 2018) for the proposition that, when a communication "does calculate the 'deficient balance,'" a "reasonable juror could conclude that, given the nature of the parties' relationship as servicer and borrower and the purpose and context of the notice of error, [defendant's] response qualified as a communication made in connection with the collection of a debt." (Doc. 31, p. 8.) What a reasonable juror may conclude as to the communication at issue in *Weber* is not pertinent to this Court's analysis of the factually inapposite Waiver Notice. The communication in *Weber* included several other significant representations in addition to the deficient balance, to wit: (a) a refund from the county had already been applied to the account; (b) the lender had requested an additional refund; (c) the lender had not yet received this refund; (d) "until the escrow account deficiency is resolved, we must decline to close the escrow account and will continue to collect for taxes"; and (e) the loan was delinquent. *Id*. at *4.

[7] The court in *Ruth* assessed the specific communication at issue and determined that the communication was sent in connection with an attempt to collect a debt because, *inter alia*: (a) it was "sent in the same envelope as the collection letter, which the defendants admit was sent for debt-collection purposes": (b) it referred to both the owner of the defaulted debt and the company hired to try to collect it; and (c) the "defendants would not have sent this combination of materials to the plaintiffs if they had not been attempting to collect a debt." 577 F.3d at 798–99.

10

communications in three prior "instructive" Seventh Circuit decisions in assessing objectively and factually whether the communication at issue was sent in connection with the collection of any debt. *Id*. In addition to *Ruth* (discussed above), the *Gburek* court considered *Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998). In *Bailey*, a communication did "not demand any payment whatsoever," but merely informed the debtors about "the current status" of their account. *Id*. at 388-389. Even though the communication did indeed list due dates for future payments, the court deemed that the communication on its face was not a communication sent in connection with the collection of any debt, but rather was merely a description of the current status of the debtor's account. *Id*. at 389.[8]

Similarly, the Sixth Circuit has assessed this issue from the perspective of the objective purpose of the communication. In *Goodson*, the Sixth Circuit found that communications were not made in connection with the collection of a debt because their "animating purpose" was not to induce the debtor to make payments. 600 Fed. Appx. at 430. The court in *Goodson* so ruled even though the communication contained an FDCPA disclaimer. *Id*. at 432; see also *Gburek*, 614 F.3d at 386 n.3 (FDCPA disclaimer "does not automatically trigger the protections of the FDCPA"); *Maynard v. Cannon*, 401 Fed. Appx. 389, 395 (10th Cir. 2010) (FDCPA disclaimer is "legally irrelevant").[9]

---

[8] The *Gburek* court also considered *Horkey v. J.V.D.B. & Associates*, 333 F.3d 769, 774 (7th Cir. 2003) (a verbal communication was a communication in connection with the collection of any debt because the words spoken in the specific communication were for the purpose of inducing the debtor to settle the debt).

[9] See also *Marshall v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 345988, at *3 (E.D. Ark. 2011), aff'd 445 Fed. Appx. 900 (8th Cir. 2011) (communications providing information to plaintiff about payment due dates and amounts owed were not communications in connection with debt collection); *Randerson v. Taylor Hayden, PLLC*, 2015 WL 4429354, at *4 (M.D. Fla. 2015) (a communication which states that it was not seeking to collect on a deficiency, and waived plaintiff's right to do so, does not constitute debt collection activity); *Bohringer v. Bayview Loan Servicing, LLC*, 141 F.Supp.3d 1229, 1242 (S.D. Fla. 2015) (a communication which states the amount of the debt and includes an FDCPA disclaimer does not constitute debt collection activity when it does not seek to collect, and was akin to a statement of account).

11

### C. Application of Proper Law to the Waiver Notice

#### 1. The Objective Purpose of the Waiver Notice

This Court, on reconsideration and pursuant to *Ruth*, should assess as a question of objective fact whether the Waiver Notice was sent "in connection with" an attempt to collect a debt. The Waiver Notice, by its own terms and language, ***waived*** LoanCare's right to collect from Hamilton and also advised Hamilton that LoanCare was ***not*** pursuing Hamilton for any balance. As such, the Waiver Notice, when viewed factually, objectively and with the common sense required under *Gburek*, leads to the conclusion that the communication was not sent in connection with the collection of a debt.

Hamilton in the Response admits the obvious – that an "effect of the letter" was to apprise Hamilton "that debt is now being waived." (Doc. 27, p. 5.) As Hamilton concedes that that Waiver Notice "waived" the debt, it is logically inconsistent for Hamilton to argue the Waiver Notice, objectively and factually, was sent "in connection with" an attempt to collect a debt.

This Court should re-assess the three *Gburek* factors, notably with the third factor determined under the proper standard. As to the first factor ("the absence of a demand for payment"), the Court found, ***and LoanCare agrees***, that the "Waiver Notice does not make a demand for payment. In fact, it does the opposite—it waives a debt." (Doc. 31, p. 6.) As to the second factor ("the nature of the parties' relationship"), the Court found, ***and LoanCare does not dispute***, that the only relationship LoanCare had with Hamilton "arose out of" Hamilton's debt. (Doc. 31, p. 6.) As to the third factor ("the purpose and context of the communications—viewed objectively"), however, the Court erred in assessing this question from the "perspective of a reasonable consumer" or as a "reasonable consumer could plausibly view the communication." (Doc. 31, pp. 6, 8, 10.)

12

The Waiver Notice, viewed factually, objectively and with the common sense required under *Gburek*, was the polar opposite of a communication sent in connection with the collection of a debt, as it advised that LoanCare was not pursuing Hamilton for any balance. Viewed objectively, the Waiver Notice was not sent in connection with an attempt to collect a debt. As noted by this Court in the Opinion, "it does the opposite—it waives a debt." (Doc. 31, p. 6.) The communication in *Bailey* did "not demand any payment whatsoever" but merely provided a "current status." 154 F.3d at 388-389. Even though the communication in *Bailey* listed "due dates" for future payments that were indeed owed by the debtor, the Seventh Circuit nevertheless found that the communication was not a "communication related to the collection of a debt." *Id*. at 389. As compared to the non-collection communication in *Bailey*, the Waiver Notice is even ***more so*** not a communication related to the collection of a debt, as it waived all amounts due rather than listing future payment due dates. This Court should also find instructive the Sixth Circuit's approach in *Goodson*, and find that the "animating purpose" of the Waiver Notice was not to induce the debtor to make payments.

### 2. **The Bankruptcy Disclaimer Issue**

LoanCare agrees with the Court that the presence of the bankruptcy disclaimer in the Waiver Notice is not dispositive. (Doc. 31, p. 9.) Despite Hamilton's statement in the Response that LoanCare, "in an attempt [sic] escape liability, seeks refuge in the bankruptcy disclaimer language," LoanCare never in fact did so. (Doc. 27, p. 11.) Rather, LoanCare's Motion effectively says the opposite – that ***despite*** the existence of a bankruptcy disclaimer, the court must look at whether the overall purpose of the communication ***as a whole*** was to induce payment and collect on a debt (Doc. 17, p. 7.)

At any rate, the language of the bankruptcy disclaimer, though not dispositive, is part of

13

the Waiver Notice and may be considered by the Court. This language supplements the general language of the Waiver Notice (i.e. that LoanCare "waives its right to collect the unpaid deficiency balance" *and* will not "pursue [Hamilton] for any portion of the deficiency balance"). The language in the bankruptcy notice further establishes, in the event Hamilton had received a bankruptcy discharge (which he had, per the Complaint), the Waiver Notice: (a) was "for informational purposes only"; (b) was "not intended to collect, recover, or offset the debt against [Hamilton] personally"; and (c) "should not be considered a demand for payment or indicate that [Hamilton is] personally liable for this debt." (Doc. 15-1.) As such, though not dispositive, the bankruptcy disclaimer further supports LoanCare's position that the Waiver Notice was not sent in connection with the collection of a debt.

### 3. **Reconsideration of the Ruling is Required**

As set forth above, the Court made a clear error of law in assessing the purpose of the communication (the third *Gburek* factor) "from the perspective of a reasonable consumer," or as a "reasonable consumer could plausibly view the communication." Pursuant to Seventh Circuit precedent and Northern District precedent in *Young*, such error may be reconsidered since it is not merely an error of "reasoning," but rather is an error of "apprehension" of the law. Reconsideration is also "consonant with justice" under *Young,* as justice requires dismissal. A failure to dismiss at this admittedly early stage of litigation will result in significant discovery and litigation under the FDCPA, with class certification requested, based merely upon a communication which, objectively and on its face, was not sent in connection with the collection of any debt. The Waiver Notice, simply stated, is not a proper communication to allow commencement of litigation in this Court.

14

WHEREFORE, Defendant LoanCare, LLC respectfully requests that this Honorable Court reconsider the Court's ruling on its Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the First Amended Class Action Complaint of Plaintiff Derrick L. Hamilton, and enter an order dismissing the Complaint in this cause with prejudice, and/or enter any other relief this Court deems appropriate.

Charles M. Baum
Fidelity National Law Group
10 S. LaSalle St., Suite 2750
Chicago, IL 60603
T: (312) 223-2540
E: charles.baum@fnf.com
Atty No. 6226607 (IL)

Respectfully, submitted,

LoanCare, LLC

By: */s/ Charles M. Baum*_____
    Its Attorney

# CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2019, I electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LOANCARE, LLC'S MOTION TO RECONSIDER RULING ON DEFENDANT LOANCARE, LLC'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which sends electronic notification to all registered participants of such filings to all attorneys of record.

/s/ *Charles M. Baum*